J-S02041-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALSHIEM THOMPSON | : | |
| | : | |
| Appellant | : | No. 642 EDA 2025 |

Appeal from the Judgment of Sentence Entered February 26, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003090-2020

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED AUGUST 11, 2026**

Alshiem Thompson appeals from the judgment of sentence imposed by the violation of probation ("VOP") court following the revocation of his probation. We vacate and remand for further proceedings.

Appellant entered a plea before the Honorable Rayford Means on January 25, 2021 to one count of Possession with Intent to Deliver ("PWID") and Criminal Use of a Communication Facility. On May 24, 2021, Judge Means imposed an aggregate sentence of 11 ½ to 23 months of incarceration, and a consecutive period of eight years of probation. Appellant was immediately paroled.

On November 21, 2023, the Philadelphia Adult Probation and Parole Department ("Probation Department") filed a "***Gagnon I*** Summary" with the VOP court, alleging, in pertinent part, that Appellant had been arrested for

violating a protection from abuse ("PFA") order.[1]  ***Gagnon I*** Summary, 11/21/23, at 2.  Appellant was then arrested and detained; the Probation Department requested that Appellant be held pending a ***Gagnon II*** hearing.[2]

Appellant entered a plea on January 25, 2024, with Appellant pleading guilty to stalking and contempt for violating an unspecified order, presumably a PFA order prohibiting contact with the stalking victim.  The Probation Department filed a request to revoke Appellant's probation based on these new convictions.  ***Gagnon II*** Summary, 2/16/24, at 3.

On February 29, 2024, the Honorable Natasha Taylor-Smith[3] issued an order revoking Appellant's probation and resentenced him to serve an aggregate period of three to six months' incarceration and a concurrent period of seven years of probation.  Order, 2/29/24.  Judge Taylor-Smith added a "No negative contact order" as one of Appellant's probationary conditions.  ***Id.*** While the order does not list a name, the subsequent history makes clear that it is the same individual listed in the PFA proceedings.

---

[1] 23 Pa.C.S. §§ 6101 – 6122.

[2] The name derives from ***Gagnon v. Scarpelli***, 411 U.S. 778 (1973).  The purpose of a ***Gagnon I*** hearing is to ensure "that probable cause exists to believe that a violation has been committed." ***Commonwealth v. Ferguson***, 761 A.2d 613, 617 (Pa. Super. 2000) (citation omitted).  A ***Gagnon II*** hearing "is required before a final revocation decision can be made." ***Id.*** (citation omitted).

[3] According to the Commonwealth's brief, Judge Means has retired and Judge Taylor-Smith has taken over Appellant's supervision.  Commonwealth's Brief at 2-3.

The Probation Department filed another **Gagnon I** summary on May 29, 2024, alleging that Appellant had been arrested on May 23 and charged with new crimes. The Probation Department recommended that Appellant remain detained pending a **Gagnon II** hearing. Charges regarding that incident were ultimately withdrawn on July 2, 2024.

Appellant thereafter filed a petition for a writ of *habeas corpus* on July 30, 2024, citing the dismissal of the charges against him and the statutory amendments to 42 Pa.C.S. § 9711, the statute governing revocation of probation, which were made effective June 11, 2024. Appellant argued that the amended statute's maximum period of 30 days of confinement for a second technical violation of probation applied to his case. Petition for Writ of Habeas Corpus, 7/30/24, at ¶¶ 12-13 (citing 42 Pa.C.S. § 9771(c)(2)(ii)).[4] Because Appellant had been held by the court's detainer for more than 30 days, Appellant argued that he was entitled to immediate release.

The VOP court implicitly denied the motion on August 22, 2024 by again revoking Appellant's "original probation/parole" and ordering him to serve the "[b]alance of [b]acktime" in the county jail at count one, followed by a consecutive period of seven years of probation at count two. Order, 8/22/24. One of Appellant's probationary conditions was "to have no contact with Porsha Baker until further order of [c]ourt." **Id.**

---

[4] Appellant considered his direct violation as counting as a "prior technical violation." Petition for Writ of Habeas Corpus, 7/30/24, at ¶ 8.

- 3 -

The Probation Department filed a new *Gagnon I* Summary on November 4, 2024, alleging that Ms. Baker had reported a violation of the "no contact" order. The document further alleged that Appellant admitted to the contact at his scheduled review meeting with the Probation Department on October 31, 2024, and he was arrested due to this violation. *Id.* The docket reflects that a probation detainer was issued November 8, 2024, followed by an order denying a motion to remove said detainer. The accompanying text for this docket entry states:

> The Defender Association of Philadelphia objects to these *Gagnon* Hearings not being recorded by digital recording or a representative of the Court Reporter's Office. There is also an objection to the defendant not being brought down in person. Per the Trial Commissioner, the objections have been noted and the Public Defender has a right to interview clients at the prison ahead of time.

Docket, 11/8/24.

The VOP court held a sentencing proceeding on February 26, 2025, with the court stating Appellant "now has a direct violation as well as a technical violation in violating the stayaway order that this court put in place in the favor of the complainant apparently in the open matter." N.T., 2/26/25, at 3.[5] Appellant "conced[ed] the violation" and asked the VOP court "to extend mercy." *Id.* at 4. Appellant noted that he had spent five months in jail due

_____

[5] The Probation Department's *Gagnon II* summary states that Ms. Baker reported Appellant's contact to the police department and that "[n]o charges have been filed at this time." *Gagnon II* Summary, 2/19/25, at 2. It appears that the "open matter" references the possibility of criminal charges and/or contempt proceedings.

- 4 -

to the detainer. Appellant accepted that the VOP court was free to impose a lengthy sentence. *Id.* (urging the court to "reserve a state sentence for somebody who would actually try to cause physical harm to the complaining witness").

The Commonwealth called Probation Officer Kiara Aimes, who testified that she received copies by email from Ms. Baker of the offending communications, which were then provided to the VOP court and the parties. Officer Aimes added, in response to the VOP court's questioning, that Appellant was not employed nor seeking employment, as required. *Id.* at 8. Additionally, Appellant failed to make payments towards any of his fines or costs. *Id.* The Commonwealth recommended a sentence of 11½ to 23 months of incarceration. *Id.* at 10.

The VOP court revoked Appellant's probation, finding that he had sent Ms. Baker 67 separate text messages and/or telephone and Facetime call requests. *Id.* at 11. The VOP court discussed the general sentencing factors codified at 42 Pa.C.S. § 9721(b) and cited Appellant's "complete and utter failure to adhere by this court's stayaway order" and opined that Ms. Baker "is in imminent danger if [Appellant] were to be released from custody." *Id.* at 15. The VOP court imposed a sentence of two to four years of incarceration at count one, and a consecutive sentence of one to two years of incarceration at count two.

Appellant filed a timely post-sentence motion, in which he again "conceded violation of his probation." Motion to Reconsider Sentence, 3/3/25,

at ¶ 1.  Appellant noted the Commonwealth's recommendation, which was made "after having consulted with" Ms. Baker, and argued that the VOP court's aggregate sentence "is excessive."  *Id.* at ¶ 4.  He was "not unmindful of the seriousness of this violation," but asked the VOP court to consider a "shorter sentence, perhaps that recommended by the [Commonwealth], with rehabilitative and restrictive conditions built into a consecutive probationary period."  *Id.* at ¶ 5.  The VOP court denied the motion.

Appellant filed a timely notice of appeal and presents two issues for our review.

> I. Was the aggregate revocation sentence excessive and did the [c]ourt abuse its discretion, for the following reasons— A. the sentence was overly punitive and improperly punished [A]ppellant for violating an erroneous stay-away condition (away from complainant on another matter before another [c]ourt) that was not germane to the instant matter (a drug case); B. the sentence was more than necessary to vindicate the authority of the [c]ourt, more than necessary to protect the public where it was longer than that requested by the Commonwealth and more than recommended by the probation office, as [A]ppellant has a non-violent history; C. the overall consecutive nature of the sentence was overly harsh and more than necessary as the sentencing [c]ourt did not consider [A]ppellant's remorse?
>
> II. Were [A]ppellant's due process rights violated under the Federal and Pa. Constitutions, when the [c]ourt imposed a non-germane condition of supervision (stay-away condition pertaining to complainant on another matter) that allows the Commonwealth to seek punishment in another venue if unsuccessful in the first?

Appellant's Brief at 4.

Decisions handed down from this Court since the parties filed their briefs require that we remand for further proceedings. Effective June 11, 2024, the General Assembly amended Section 9771 ("Act 44") and significantly restricted a VOP court's authority to revoke and resentence probationers. In February, this Court issued ***Commonwealth v. Seals***, ___ A.3d ____, 2026 WL 739101 (Pa. Super. filed Feb. 19, 2026) (*en banc*), which explained the history of the pre-Act 44 amendments. "Prior to Act 44, section 9771(b) allowed the trial court, upon revocation, to choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration." ***Id.*** at *5 (quotation marks and citation omitted). That authority "was implicitly limited by 9771(c), which prohibited a trial court from imposing a resentence of total confinement" unless the court found one of three conditions applied: that "the defendant was convicted of another crime, his conduct indicated he would likely commit another crime unless confined, or total confinement was essential to vindicate the authority of the court." ***Id.*** (quotation marks and citations omitted).

Act 44 limited that authority in two ways. First, the General Assembly "ma[de] subsection (c)'s limitation upon the court's sentencing authority express by adding" language making clear that the authority to resentence a violator was expressly limited by other sections of the statute. ***Id.*** at *6. Second, Act 44 "substantially limited the court's resentencing authority under subsection (c), which differs significantly from the prior version[.]" ***Id.*** at *15.

- 7 -

Of particular note is the statutory "presumption against total confinement for technical violations of probation." 42 Pa.C.S. § 9771(c). Subsection (c) codifies three circumstances in which a VOP court may impose a period of total confinement. First, if "the defendant has been convicted of another crime[.]" *Id.* (c)(1)(i). Second, if "the court finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety," which requires a further finding that "the defendant cannot be safely diverted from total confinement through less restrictive means[.]" *Id.* (c)(1)(ii). Third, if the "court finds by a preponderance of the evidence that the defendant committed a technical violation" **and** one of six separate conditions exists. *See id.* (c)(2)(iii)(A-F). If one of these scenarios applies, the statute imposes further limitations on the maximum period of confinement. *Id.* (c)(2)(i-iii).

Per *Seals*, we must first address whether the VOP court erred in finding that Appellant's violations satisfied one of the three conditions for imposing total confinement. Whether one of these conditions exists implicates the legality of Appellant's sentence, and we review *de novo* whether the triggering facts exist in this case. *Seals*, 2026 WL 739101 at *14 ("Where … the trial court's authority is preconditioned on the finding of a triggering fact, the legality of sentence claim includes our *de novo* review of whether the requisite fact exists.")(internal quotation marks omitted).

We begin by observing it is not clear on what basis the VOP court revoked Appellant's probation. The Rule 1925(a) opinion states that Appellant

"was found to be in technical violation of his supervision." VOP Court Opinion (VCO), 5/5/25, at 1 (unnumbered). Therefore, the court did not revoke Appellant's probation on the basis that "he has been convicted of another crime." 42 Pa.C.S. § 9771(c)(1)(i).[6] Accordingly, the statute provides that total confinement may be imposed only under the following circumstances:

> (ii) the court finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted from total confinement through less restrictive means; or
>
> (iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:
>
> > (A) The technical violation was sexual in nature.
> >
> > (B) The technical violation involved assaultive behavior or included a credible threat to cause bodily injury to another, including acts committed against a family or household member.
> >
> > (C) The technical violation involved possession or control of a firearm or dangerous weapon.
> >
> > (D) The technical violation involved the manufacture, sale, delivery or possession with the intent to manufacture, sell or deliver, a controlled substance or other drug regulated under the act of April 14, 1972 (P.L. 233, No. 64),1 known as The Controlled Substance, Drug, Device and Cosmetic Act.

_____

[6] Appellant has been convicted of other crimes since the commencement of his original period of probation. We decline to address whether this statutory language permits a VOP court to impose a sentence of total confinement when, as here, the VOP court initially declines to exercise this option when finding a direct violation of probation. The VOP court's stated basis for revoking Appellant's probation was the violation of his "no contact" orders, and we accordingly limit our analysis to that basis.

(E) The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.

(F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means. For purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations.

42 Pa.C.S. § 9771(c)(1)(ii-iii).

It is clear that Appellant conceded "a" technical violation; namely, his failure to abide by the "no contact" order. Setting aside that the record does not demonstrate the precise nature of Appellant's multiple violations of the "no contact" order, those violations could plausibly fit either Section 9771(c)(1)(ii), (c)(iii)(B), or (c)(iii)(F). Due to our inability to identify a statutory basis for imposing a sentence of total confinement, we conclude that a remand is required. We further direct the VOP court to hold a hearing on this matter to permit the parties to develop a more complete record.

In conjunction with our remand, we add two points. First, Appellant argues at length that the "no contact" condition was "a non-germane condition of supervision" because the underlying convictions involved drugs. *See* Appellant's Brief at 10. However, Appellant does not directly claim that the sentence of total confinement was legally barred in that the VOP court lacked authority to impose the condition. *See also Commonwealth v. Laughman*, 314 A.3d 569, 5745 (Pa. Super. 2024) (noting that "there is no explicit statutory requirement that there be a 'nexus between the crime to which [the

- 10 -

defendant was convicted]' and the probationary condition") (bracketing in original). Instead, he largely links the alleged disconnect between the "non-germane condition" and his probation to his argument that the VOP court abused its discretion in selecting the total length of confinement. ***See id.*** at 11-12.

Indeed, Appellant argues in his related second issue that he "was not found in violation of any PFA order or criminal matter" as a result of the 67 acts cited by the VOP court. ***Id.*** at 25. While some aspects of his argument suggest that the VOP court had no authority to impose the "no contact" order at all, ***see id.*** at 31, Appellant simultaneously argues at length that he was not convicted of any new crime based on those violations and thus this case should have been treated as involving technical violations. ***See id.*** ("[Appellant] has been in violation of the no-contact/stay-away, as was conceded by VOP counsel."). Therefore, even in his second issue, Appellant's argument is less about whether the VOP court could require him to comply with the "no contact" condition of probation and more about the possible punishment the VOP court could impose for violating that condition. ***Id.*** at 28 ("[I]n the instant matter, there were only technical violations, there was no conviction and no direct violation.").[7]

_____

[7] To the extent Appellant is referencing the other technical violations cited by Officer Aimes, *i.e.* his failure to maintain employment and pay costs and fines, and therefore presents a claim that the VOP court simply could not impose the "no contact" order at all, we conclude Appellant has waived the argument by
*(Footnote Continued Next Page)*

- 11 -

Second, we observe that, as a practical matter, whether the VOP court found sufficient facts to overcome the statutory presumption against total confinement will often be a secondary concern because the maximum allowable time periods for first and second technical violators are, respectively, 14 and 30 days. *See* 42 Pa.C.S. § 9771(c)(2)(i-ii). Thus, by the time this Court addresses an appeal from a revocation, violators will almost certainly have served more than the legal maximum. *Cf. Seals*, 2026 WL 739101 at *12 (noting Seals' argument that the VOP court "neither considered nor placed findings on the record as to whether his technical violations satisfied any exception to the presumption against incarcerating him" and claiming that, at most, he was subject to a 14 day period of incarceration).

---

failing to account for the precedents in this area. Specifically, *Laughman* rejected the argument that there must be a direct link between the underlying convictions and the probationary condition. *But see* Appellant's Brief at 29 (suggesting that the "no contact" order was *per se* invalid because Ms. Baker "has nothing to do with the instant PWID case").

Furthermore, 42 Pa.C.S. § 9763(b)(15) permits a court to require, as a condition of probation, a probationer "To do other things reasonably related to rehabilitation." Appellant's brief does not cite this provision. Instead, he likens the "no contact" order to a condition requiring him "to be nice to his sister, or his neighbors, or anyone who has nothing to do with the PWID probation[.]" Appellant's Brief at 31. Those fanciful examples are not, in our view, comparable to the condition here given that Appellant, during the course of his supervision, was convicted of stalking Ms. Baker and therefore committed a direct violation. The VOP court chose to exercise leniency based on his direct violation and the "reasonableness" of the "no contact" requirement cannot be readily divorced from his direct violation and the VOP court's decision not to impose a lengthy period of confinement for his direct violation of probation.

Indeed, the bulk of Appellant's argument is directed at whether the VOP court's sentence of 3 to 6 years of incarceration was excessive. However, we decline to proceed to examine whether that sentence was permitted. The VOP court proceeded under 42 Pa.C.S. § 9771(c)(2)(iii), which applies to a "third or subsequent technical violation" and authorizes "any sentencing alternatives available at the time of initial sentencing." 42 Pa.C.S. § 9771(c)(2)(iii). Notably, Appellant apparently accepts that the VOP court could proceed under this statutory language. However, because **Seals** makes clear that this issue also implicates the legality of sentence, we direct the parties to consider this issue on remand. Specifically, the statute facially authorizes the imposition of "any sentencing alternatives" initially available only for a "third or subsequent technical violation," and in **Commonwealth v. Oglesby**, ___ A.3d ____, 2026 WL 847717 (Pa. Super. filed March 27, 2026), we held that "a VOP court must consider only violating behaviors that were accompanied by a judicial finding that the probationer committed a violation." The Commonwealth's brief signals that it views Appellant as having violated the technical conditions of probation dozens of times. **See** Commonwealth's Brief at 9 (arguing that "[Appellant] invites this court to treat his technical violation of a specified condition of probation, which he violated more than sixty times, as the equivalent of a bare arrest that did not lead to a conviction"). In **Oglesby**, we rejected a similar argument that a VOP court should consider the underlying conduct and not the number of judicial findings of a violation. **See** **Oglesby**, 2026 WL 847717 at *10 ("According to the Commonwealth, section

- 13 -

9771(c) 'looks to the number of violations the defendant has **committed**[.]'") (quoting Commonwealth's brief). On remand, if the VOP court determines that the Commonwealth has met its burden of showing total confinement is permitted, the parties should then address how many prior technical violations Appellant has accumulated for purposes of determining the applicable maximum sentence.

Finally, we stress that our remand derives from the legality of sentence framework, which does not require Appellant to have preserved issues for our review. In this regard, we note that Appellant has not claimed that he lacked notice of what the Commonwealth intended to prove at the *Gagnon I* hearing which established the probable cause to believe Appellant was in violation of one or more conditions.

> In the adult revocation context, we have explained that a written notice of alleged violations and the disclosure of evidence to be presented in support ensures that the probationer can sufficiently prepare his case, both against the allegations of violations, and against the argument that the violations, if proved, demonstrate that parole or probation is no longer an effective rehabilitative tool and should be revoked.

*Interest of K.G.-B.*, ___ A.3d ____, 2026 WL 554391 (Pa. Super. filed February 27, 2026) (quotation marks and citation omitted).

Because Appellant has not claimed he lacked notice, our remand is without prejudice to the Commonwealth's ability to file a formal document stating which "statutory precondition" permits a sentence of total confinement applies in this case.

Judgment of sentence vacated.   Remanded for further proceedings consistent with this memorandum.   Jurisdiction relinquished.

Judge Murray joins this memorandum.   Judge Nichols concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/11/2026